```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :

        - v. -                      :     05 Cr. 1311 (PAC)

MARVIN MCFOY,                       :

            Defendant.              :

- - - - - - - - - - - - - - - - - - - - x
```

**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION**
**TO MARVIN MCFOY'S MOTION TO DISMISS THE INDICTMENT**

>                               MICHAEL J. GARCIA
>                               United States Attorney for the
>                               Southern District of New York
>                               Attorney for the United States
>                                     of America.

CHRISTINE Y. WONG
RANDALL W. JACKSON
Assistant United States Attorneys
    - Of Counsel -

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :

        - v. -                      :      05 Cr. 1311 (PAC)

MARVIN MCFOY,                       :

              Defendant.            :

- - - - - - - - - - - - - - - - - - - - x
```

**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION
TO MARVIN MCFOY'S MOTION TO DISMISS THE INDICTMENT**

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum of law in opposition to defendant Marvin McFoy's pre-trial motion to dismiss the Indictment pursuant to the Sixth Amendment to the United States Constitution. For the reasons set forth below, the Government respectfully submits that the defendant's motion should be denied.

**STATEMENT OF FACTS**

In or about the summer of 2005, DEA agents were conducting an investigation of individuals engaged in a conspiracy to distribute narcotics. As part of that investigation, Court-authorized interceptions were obtained over a cellular telephone used by McFoy and over telephones used by his co-conspirators. See Affirmation of James Lee ("Lee Aff."), at ¶ 3. During the course of the investigation, the agents were able to identify McFoy and determined that he lived at 1368

Sheridan Avenue, Apartment 5C, Bronx, New York ("1368 Sheridan Avenue").  Lee Aff. at ¶¶ 4, 6.

In or about July 2005, one of McFoy's co-conspirators ("CC-1") was arrested with approximately 460 grams of heroin and $16,000 in cash.  DEA agents monitoring the wire-tapped phones overheard McFoy's other co-conspirators, including his co-defendants, dicussing the arrest of CC-1.  Lee Aff. at ¶ 9.

On or about December 15, 2005, defendant Marvin McFoy and two other individuals were charged in an indictment with participating in a conspiracy to violate the narcotics laws of the United States.  Arrest warrants issued for all three.  Lee Aff. at ¶ 9.

After the warrants were issued, DEA agents went to 1368 Sheridan Avenue.  The agents surveilled that location twice in December 2005 and did not observe McFoy there.  Lee Aff. at ¶ 9.  They also went to Unity African Market, a location that they previously observed McFoy to frequent, and also did not see him there.  Id.  One day in early January 2006, the agents went to 1368 Sheridan Avenue at 7:30 a.m., and knocked on the door.  Lee Aff. at ¶ 10.  After no one answered, one of the agents pushed in the door a few inches, peered in and observed that there was no furniture in the room and it appeared that no one was living in the apartment.  Id.  The agents concluded that McFoy was no longer living in the Bronx, and likely had returned to Ghana.  Id.

Over the course of the next 23 months, they coordinated with the DEA office in Lagos, Nigeria, to help locate McFoy. Lee Aff. at ¶¶ 12, 14. In addition, approximately every six months, the lead investigating DEA agent, Special Agent James Lee, conducted searches of law enforcement and commercial databases to determine if there was any new information about the whereabouts of McFoy. Lee Aff. at ¶ 12.

On November 5, 2007, Deputy United States Marshals with the United States Marshals Service were attempting to locate a fugitive not related to this case. They interviewed an individual who turned out to be Marvin McFoy, the defendant. After running a warrant check on his name and date of birth, they learned that there was an outstanding warrant for his arrest, and they arrested McFoy. Lee Aff. at ¶ 15.

**ARGUMENT**

The defendant argues that the Court should dismiss the Indictment because twenty-three months passed between the date the Indictment was filed and the date on which the defendant was arrested. Defendant's Br. at 3-4. He argues that this delay constituted a violation of his Sixth Amendment right to a Speedy trial. As discussed in more detail below, the Court should reject the defendant's Sixth Amendment argument.

I.  Applicable Law

A defendant's right a "speedy trial" is guaranteed by the Sixth Amendment to the Constitution, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial ...." U.S. Const. Amend. VI; see Doggett v. United States, 505 U.S. 647 (1992). In determining whether a period of pre-trial delay is excessive in violation of the Sixth Amendment, courts must consider and balance four factors, the so-called "Barker factors," which are: "(1) the length and (2) reason for the delay, (3) whether the defendant timely asserted his rights, and (4) whether the defendant has been prejudiced by the delay." United States v. Jones, 91 F.3d 5, 7 (2d Cir. 1996) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)).  In general, "[n]o single factor ... is 'either a necessary or sufficient condition to the finding of a deprivation of the right,' and courts are required to conduct a sensitive balancing process whereby the conduct of both the prosecution and the defendant are weighed."  United States v. Perez-Cestero, 737 F. Supp. 752, 763 (S.D.N.Y. 1990) (quoting Barker v. Wingo, 407 U.S. at 530).

In order to establish that he is entitled to relief or an evidentiary hearing on any motion, however, a defendant must first state sufficient facts which, if proven, would require the granting of the relief requested.  See United States v. Culotta,

413 F.2d 1343, 1345 (2d Cir. 1969); United States v. Gillette, 383 F.2d 843, 848-49 (2d Cir. 1967).  To meet this burden, a defendant must present his claim through an affidavit of an individual with personal knowledge of the relevant facts.  See United States v. Collazo, 1997 WL 193328 at *1 (S.D.N.Y. Apr. 18, 1997) (motion to dismiss the indictment denied because defendant did not submit an affidavit, but rather relied on attorney affidavit); United States v. Gillette, 383 F.2d at 848-49.

> II.   **The Defendant Is Not Entitled to a Hearing and the Court Should Deny His Motion.**

In support of his motion to dismiss, the defendant does not submit an affidavit based on his personal knowledge, but rather submits an affirmation from his attorney based "upon information and belief."  Affirmation of Robert Baum, Esq. ("Baum Aff.") at ¶ 3.  The affirmation states that McFoy, from April 2002 until his arrest on November 5, 2007, "resided continuously at [1368 Sheridan Avenue, Apartment 5C, Bronx, New York] with his 8 year old daughter."  Baum Aff. at ¶ 8.  In support of that claim, the affirmation attaches numerous documents that allegedly reflect that numerous government agencies were aware that McFoy lived at that address from 2002 to the date of his arrest.  Baum Aff. at ¶ 9.

Affidavits by defense counsel who do not have any personal knowledge of the relevant facts do not entitle the

5

defendant to a hearing.  See United States v. Caruso, 684 F. Supp. 84, 87 (S.D.N.Y. 1988).  Until a preliminary assertion of relevant facts is made by an individual with personal knowledge, a defendant is generally not entitled to an evidentiary hearing. Allegations, "supported only by speculation," are insufficient. United States v. Aulicino, 44 F.3d 1102, 1117 (2d Cir. 1995). As is evident from the face of the Baum Affirmation, Mr. Baum has no personal knowledge as to McFoy's continuous whereabouts from 2002 to the date of his arrest. Moreover, the documents attached to the affirmation do not prove that McFoy lived continuously in the Bronx during the relevant time period, as alleged in the affirmation.

Exhibit B is a Social Security Statement for McFoy dated December 4, 2002. Exhibit C is letter from the Internal Revenue Service dated August 1, 2002. Exhibit D is an undated jury summons.  Whether McFoy received mail at 1368 Sheridan Avenue in 2002 and on some unknown date has no bearing on whether he resided at that address. That he received mail at this location certainly does not indicate that the Government knew or should have known McFoy was residing there during the period from December 2005, when the Indictment was returned, to November 2007, when he was arrested.  Indeed, as described more fully below, the DEA agents were aware that McFoy lived at 1368 Sheridan Avenue before the Indictment, but, after the Indictment,

the agents reasonably concluded that McFoy had vacated the premises as he could not be found.

Exhibit E is similarly unhelpful. It is a letter from McFoy's immigration attorney dated August 21, 2006 that encloses a receipt from U.S. Citizenship and Immigration Services ("CIS") regarding an I-130 petition for a visa filed by an individual named Orleans Victor McFoy, with the attorney's address, on behalf of the defendant. From this document, McFoy argues that <u>his</u> address was known to the Department of Homeland Security, and thus, the Government would have been able to find him "within a few days" if they had made an effort to locate him. Memorandum of Law in Support of Defendant Marvin McFoy's Motion to Dismiss the Indictment and Grant Discovery ("Mem.") at 7. McFoy's argument incorrectly assumes that by having a relative file a petition on his behalf and by receiving mail from an attorney at 1368 Sheridan Avenue, something should have triggered the attention of the DEA agents who were looking for him. This, however, is plainly wrong. After an I-130 petition is filed by a relative and approved by CIS, the person to whom a visa was issued–here, McFoy–would then file a petition to adjust his status to lawful permanent resident. Lee Aff. at ¶ 16(a). It is only after the alien has filed his petition to adjust status that CIS runs a warrant check on the alien. <u>Id</u>. Here, the I-130 petition filed on behalf of McFoy has not yet been approved, and

McFoy has not filed his petition to adjust status.  <u>Id.</u> at ¶ 16(b).  CIS, therefore, has not reached the point in its processing at which it would have run a warrant check on McFoy and learned that there was an outstanding warrant for him.  <u>Id.</u>  CIS had no reason to know that there was a warrant issued for McFoy, and therefore, had no reason to inform the DEA or any other law enforcement agency about McFoy's address.

      Not only does the Baum Affirmation not provide any personal knowledge relevant to whether McFoy was residing continuously in the Bronx since 2002, or even whether the Government should have known that McFoy was residing there, it directly contradicts the defendant's own statement to his pre-trial services officer.  According to the pre-trial services report, when interviewed by the pre-trial services officer after his arrest, the defendant stated that since 2002 he has been alternating residences between 1368 Sheridan Avenue, Bronx, New York, and 2420 Kirkstone Drive, Buford, Georgia.  The defendant also stated that he lived at 1120 Autumn Village Court, Duluth, Georgia for approximately 3 years.[1]  Based on the defendant's own statements, he has not been living continuously since 2002 in the Bronx.  It is, therefore, no surprise that the defendant did not submit an affidavit in support of his motion; he cannot do so

---

[1] The Government is providing a copy of the defendant's pre-trial services report by separate cover to the Court to protect the confidential nature of the report.

without contradicting what he told his pre-trial services officer.

Thus, there is no factual basis to support McFoy's motion, and it should be denied.

### III. Marvin McFoy Has Not Been Deprived of His Sixth Amendment Right to a Speedy Trial.

The defendant argues that the length of time between his Indictment and his appearance in this district has deprived him of his Sixth Amendment right to a speedy trial.  In this regard, McFoy argues that the delay since he was indicted is "uncommonly long," that the Government "utterly failed" to exercise due diligence in attempting to locate and apprehend him. Mem. at 6-7.  Although there has been some delay, the Government did, in fact, exercise the requisite due diligence in locating him.  The Government's failure to arrest McFoy earlier should be attributed to McFoy.  Accordingly, his motion should be denied.

#### A.   A Fact-Based Inquiry into the *Barker* Factors is Warranted.

Where the length of time between the return of an indictment and the arrest of the defendant exceeds one year, such a passage of time is considered "presumptively prejudicial."[2] However, such presumptive prejudice does not alone justify the

---

[2] "'[P]resumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry." Doggett v. United States, 505 U.S. 647, 652 n.1 (1992).

dismissal of an indictment. Rather, it simply triggers an inquiry into the other three Barker factors. See United States v. Blanco, 861 F.2d 773, 777-78 (2d Cir. 1988). Because more than 23 months passed between the filing of the Indictment against Marvin McFoy and his appearance in this district, a consideration of the remaining three Barker factors is necessary.

As demonstrated below, an analysis of these factors makes plain that a dismissal of the Indictment is not warranted in this case.

### B. The Length of Time Before Marvin McFoy's Arrest Was The Result of His Own Efforts to Avoid Apprehension.

All of the evidence before the Court demonstrates that the blame for the delay lies with the defendant, not the Government, because the Government diligently searched for the defendant since early December 2005– even before the Indictment was filed – through the date of his arrest. See United States v. Mundt, 29 F.3d 233, 236 (6th Cir. 1994) ("If the government has been diligent in its pursuit of a defendant and delay was 'inevitable and wholly justifiable,' a speedy trial claim will generally fail.") (quoting Doggett, 505 U.S. at 656); United States v. Aguirre, 994 F.2d 1454, 1457 (9th Cir. 1993) ("Because the search was diligent, we weigh [the second Barker factor] – whether the government or the defendant is more to blame for the delay – against the defendant.")

Prior to and immediately following the issuance of the arrest warrant, DEA agents began searching for the defendant at the places where they had previously surveilled him, the Unity African Market and 1368 Sheridan Avenue.[3]  Lee Aff. at ¶¶ 8, 9, 10.  When they did not observe him at either location, they knocked on the door at 1368 Sheridan Avenue.  When no one came to the door, they pushed it open, and observed that there did not appear to be anyone living there.  Id. at 10.  Based on information they had learned during the investigation and based on their general training and experience, the agents concluded that McFoy had returned to Ghana.  Id.  As such, in January 2006, August 2006, and October 2007, the agents requested the aid of the DEA office in Lagos, Nigeria, to locate McFoy in Ghana.  Id. at 12, 14. The Lagos office was unsuccessful.

After learning that McFoy was no longer residing at 1368 Sheridan Avenue, the agents requested that the warrant for McFoy be entered into the National Crime Information Center ("NCIC") database.  Id. at 11.  Approximately every six months after the agents discovered McFoy was no longer residing at 1368 Sheridan, the agents continued to conduct records checks through

---

[3] In the summer of 2005, at the same time that DEA agents were surveilling McFoy in the Bronx, they also learned that McFoy had been issued a driver's license by the state of Georgia with the address 1120 Autumn Village Ct., Duluth, GA, 30096. Because the DEA agents were observing McFoy in the Bronx, they concluded that the address in Georgia was a fake address.  Lee Aff. at ¶ 6.

NCIC to determine whether McFoy had been located or identified by any other law enforcement agency.  At the same time, the agents also conducted records checks through "AutoTrack," a commercial database that provides address and information for individuals. Id. at 13.  The agents did not learn of any new whereabouts for McFoy.

In sum, all of the evidence before the Court demonstrates that the DEA acted diligently in attempting to locate and arrest the defendant, and that the defendant's own evasion "is more to blame for [the] delay."  Doggett, 505 U.S. at 651.  See United States v. Walker, 92 F.3d 714, 718 (8th Cir. 1996) (where FBI agents placed defendant on NCIC registry and checked registry every six months to see if defendant had been located, government was not negligent for failing to take other steps to locate defendant, such as visiting defendant's parents' residence; 37-month delay between indictment and arrest did not violate speedy trial right);  Aquirre, 994 F.2d at 1457 (speedy trial right not violated by five-year delay between indictment and arrest, where government had conducted reasonably diligent investigation, and defendant knew charges against him were pending but did not advise authorities of his whereabouts); United States v. Forrester, 837 F. Supp. 43, (D. Conn. 1993) (Cabranes, J.) (speedy trial right not violated by 47-month delay between indictment and arrest, where no evidence of government's

"egregious persistence in failing to prosecute," despite fact that defendant claimed to live openly), aff'd 630 F.3d 52 (2d Cir. 1995).

Even during the period between mid-January 2006 and the date of McFoy's arrest in November 2007, when the DEA agents' investigation consisted primarily of bi-annual checks and updates of the NCIC registry, they did not so limit their investigation out of negligence. Rather, the agents circumscribed their investigation because, as a result of the defendant's successful evasion, their search efforts thus far had proven futile. Government agents "are not expected to make heroic efforts to apprehend a defendant who is purposefully avoiding apprehension or who has fled to parts unknown." Rayborn v. Scully, 858 F.2d 84, 90 (2d Cir. 1988). See Walker, 92 F.3d at 718 (where FBI agents checked NCIC registry every six months to see if defendant had been located, government not negligent for failing to take other steps to locate defendant); Wilson v. Mitchell, 250 F.3d 388, 395 (6th Cir. 2001) (attributing primary responsibility for delay to the defendant "because [defendant] actively evaded discovery, and the state was, at worst, passive in its pursuit of him"). See also 18 U.S.C. § 3161(h)(3)(A) (excluding time for Speedy Trial Act purposes for any period of delay resulting from the defendant's absence); 18 U.S.C. § 3161(h)(3)(B) ("[A] defendant . . . shall be considered absent when his whereabouts

are unknown and, in addition, he is attempting to avoid apprehension or prosecution or his whereabouts cannot be determined by due diligence.").

Even were the Court to deem DEA negligent, such negligence would not warrant dismissal of the Indictment. When a court finds delay caused by the government's negligence, prejudice to the defendant is <u>not</u> automatically presumed, but rather a court must evaluate the potential for prejudice in light of the length of the delay. See Doggett, 505 U.S. at 656-67 (noting that the "weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows"). Using such balancing tests, courts have declined to dismiss indictments on speedy trial grounds for delays of similar magnitude occasioned by outright neglect, where no prejudice is shown. See, e.g., United States v. Serna-Villareal, 352 F.3d 225, (5th Cir. 2003) (where government failed for three year period to apprehend defendant indicted on charge of illegal reentry, even after INS agent interviewed defendant but failed to determine charge was pending against him, dismissal not required because no indication "that either the government's negligence or the length of the delay here adversely affected the evidence so as to undermine the fairness of a trial"). Here, as discussed more fully below, the defendant has made no showing that he has suffered any actual prejudice as a result of the delay – nor can he.

DEA agents diligently searched for the defendant; that it took them 23 months to find him is the fault of the defendant, not the Government.

**C.   The Defendant Did Not Timely Assert His Rights.**

The third <u>Barker</u> factor also weighs against the defendant. Although defense counsel claims that the defendant was unaware of the Indictment, the Government has put forth evidence, in the form of the Affirmation of James Lee, demonstrating that in July 2005, after the arrest of an unindicted co-conspirator ("CC-1") with approximately 460 grams of heroin and $16,000 in cash, DEA agents intercepted calls between McFoy's co-defendants discussing the arrest of CC-1. Lee Aff. at ¶ 10. Given his co-defendant's discussions, the DEA agents believed that McFoy also would have learned about the arrest of CC-1. <u>Id.</u> After observing that McFoy no longer frequented the Unity African Market and 1368 Sheridan Avenue, the DEA agents concluded that McFoy was aware of the arrest of CC-1, and was concerned that there were pending charges for him. <u>Id.</u> In the face of this evidence, the defendant has failed to submit any competent evidence that he was unaware of the charges against him, as he must to obtain a hearing (<u>see</u> pp. 5-9 above). Accordingly, the defendant has failed timely to assert his speedy trial claim.

15

**D.    The Defendant Did Not Suffer Cognizable Prejudice.**

The final <u>Barker</u> factor is the prejudice suffered by the defendant. The defendant asserts that he has been "severely prejudiced by this delay" because "witnesses who would corroborate [his] defense have disappeared." Mem. at 9. The defendant's allegations are vague and unsupported by any factual assertions. Once again, defendant's failure to submit an affidavit is fatal to his claim. Aside from conclusory allegations offered in the memorandum of law in support of his motion, McFoy provides the Court with no explanation as to how a 23-month delay has prejudiced him. As the Second Circuit explained in rejecting vague allegations of prejudice in <u>Blanco</u>, "since delay can just as easily hurt the government's case, [defendant's] general claim that the delay impaired her defense also lacks force." <u>Blanco</u>, 861 F.2d at 780.

Thus, this factor does not help the defendant.

**CONCLUSION**

The defendant has provided no factual basis on which to grant this motion. Moreover, a review of the Barker factors shows that the Indictment should not be dismissed. Accordingly, the defendant's motion to dismiss the Indictment should be denied.

Dated:   New York, New York
         March 11, 2008

                              Respectfully submitted,

                              MICHAEL J. GARCIA
                              United States Attorney

                    By:   _____/s/_____
                          Christine Y. Wong
                          Randall W. Jackson
                          Assistant United States Attorneys
                          Tel.: (212) 637-2460/1029