UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                     :

        - v. -                               :    05 Cr. 1311 (PAC)

MARVIN MCFOY,                                :

              Defendant.             :

- - - - - - - - - - - - - - - - - - - - x


**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT MARVIN MCFOY'S MOTION TO SUPPRESS**


                          MICHAEL J. GARCIA
                          United States Attorney for the
                          Southern District of New York
                          Attorney for the United States
                              of America.


RANDALL W. JACKSON
Assistant United States Attorney
     - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                  :

                - v. -                    :    05 Cr. 1311 (PAC)

MARVIN MCFOY,                             :

                     Defendant.           :

- - - - - - - - - - - - - - - - - - - - x

### GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO MARVIN MCFOY'S MOTION TO SUPPRESS

### PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to defendant Marvin McFoy's pre-trial motion seeking to suppress communications intercepted over a wiretap.[1] For the reasons set forth below, the Court should deny the defendant's motion.

### INVESTIGATION BACKGROUND

In or about the summer of 2005, Drug Enforcement Administration ("DEA") agents were conducting an investigation of individuals engaged in a conspiracy to distribute narcotics. As part of that investigation, Court-authorized interceptions were obtained over a cellular telephone used by McFoy and over several

---

[1] The defendant's motion is styled as a response to the Government's July 7, 2008 motion to allow Agent James Lee to testify as a summary witness. As discussed in more detail, however, later in this affidavit, the motion is functionally a motion to suppress.

telephones used by his co-conspirators.  See Affirmation of James
Lee ("Lee Aff."), attached as Exhibit 1, at ¶ 3; Affirmation of
Virginia Romano, attached as Exhibit 2, at ¶ 1.  The Government
intends to introduce calls intercepted pursuant to only three of
these orders.  On May 11, 2005, the Honorable Thomas P. Griesa
signed an order authorizing the DEA to intercept wire
communications over a phone with assigned call number 646-894-
6458 ("the 6558 Phone").  On June 1, 2005, the Honorable Denise
Cote signed an order authorizing the DEA to intercept wire
communications over a phone with assigned call number (646)418-
7792, which was used by defendant Marvin McFoy  (the "McFoy
Phone").  On July 5, 2005, the Honorable Sidney H. Stein signed an
order authorizing the DEA to continue to intercept wire
communications over the McFoy Phone and to intercept
communications over a phone with assigned call number (908)652-
1093 (the "Solo Phone").

      During the time period that the DEA intercepted calls
over the 6458 Phone, the McFoy Phone, and the Solo Phone, the DEA
intercepted numerous phone calls in which the defendant and his
coconspirators made statements in furtherance of a narcotics
conspiracy. Lee Aff. at 3. The DEA simultaneously conducted
extensive surveillance of the conspirators, and ultimately seized
approximately 400 grams of heroin in connection with the
conspiracy. Lee Aff. at 3.

      The DEA terminated interception, pursuant to the May

2

11, 2005 Order, over the 6458 Phone on May 26, 2005. <u>See</u> June 3, 2005 Sealing Order, attached as Exhibit 3.  On June 3, 2005, Assistant U.S. Attorney Virginia L. Chavez[2] presented an optical disk containing all of the wire communications intercepted over the 6458 Phone, pursuant to the May 11, 2005 Order, to the Honorable Denis Cote. <u>Id.</u> Judge Cote ordered that the disk and the application for sealing be sealed, and that the former be held in the custody of the DEA. <u>Id.</u>

Pursuant to the July 5, 2005 Order signed by Judge Stein, authorizing continued interception, the DEA continued to intercept wire communications over the McFoy Phone beyond the period initially authorized by Judge Cote's May 31, 2005 Order. <u>See</u> July 19, 2005 Sealing Order, attached as Exhibit 4. On July 19, 2005, Assistant U.S. Attorney Virginia L. Chavez presented an optical disk containing all of the wire communications intercepted over the McFoy Phone, pursuant to the June 1, 2005 Order, to the Honorable George B. Daniels. <u>Id.</u> Judge Daniels ordered that the disk and the application for sealing be sealed, and that the former be held in the custody of the DEA. <u>Id.</u>

Pursuant to an August 18, 2005 Order signed by Judge Kenneth Karas, the DEA continued to intercept wire communications over the McFoy Phone and the Solo Phone beyond the period of continued interception authorized by Judge Stein's July 5, 2005

---

[2] AUSA Chavez has since married and changed her named to Virginia Chavez Romano.

Order.  See September 29, 2005 Sealing Order, attached as Exhibit
6; August 18, 2005 Sealing Order, attached as Exhibit 5. On
August 18, 2005, Assistant U.S. Attorney Virginia L. Chavez
presented three optical disks containing all of the wire
communications intercepted over the McFoy Phone and the Solo
Phone, pursuant to the July 5, 2005 Order, to the Honorable
Kenneth M. Karas. Id. Judge Karas ordered that the disks and the
application for sealing be sealed, and that the former be held in
the custody of the DEA. Id.

       The DEA temporarily ceased interception over the McFoy
Phone and the Solo phone on August 4, 2005 and August 6, 2005,
respectively. On August 18, 2005, Judge Karas authorized the DEA
to continue interception over the McFoy Phone and the Solo Phone.
The DEA continued interception over the McFoy Phone and the Solo
Phone through September 16, 2005. See September 29, 2005 Sealing
Order, attached as Exhibit 6. On September 29, 2005, Assistant
U.S. Attorney Virginia L. Chavez presented three optical disks
containing all of the wire communications intercepted over the
McFoy Phone and the Solo Phone, pursuant to the August 18, 2005
Order, to the Honorable Richard Berman. Id. Judge Berman ordered
that the disks and the application for sealing be sealed, and
that the former be held in the custody of the DEA. Id.

## PROCEDURAL BACKGROUND

       On December 15, 2005, a grand jury in the Southern

4

District of New York returned Indictment 05 Cr. 1311(PAC),

charging the defendant and two others with conspiring to violate

the narcotics laws of the United States, in violation of Title

21, United States Code, Section 846.  On November 5, 2007, the

defendant was arrested pursuant to the charges in the Indictment.

Docket Sheet at 4, attached as Exhibit 7. On December 3, 2005,

the Government produced extensive discovery to the defendant,

including: (1) all of the wire applications related to the 6458

Phone, the McFoy Phone, and the Solo Phone; (2) compact discs

containing recordings of all of the telephone calls intercepted

over the relevant phones and all linesheets; and (3) laboratory

reports relating to the narcotics seized in connection with the

investigation. See Government's Rule 16 Discovery Letter,

attached as Exhibit 8. On January 3, 2008, the parties appeared

before the Court for a pre-trial conference. Docket Sheet at 5.

With no objection from the defendant, the Court ordered that the

parties appear again for a pre-trial conference on January 24,

2008, and that the defendant report at that time any motions that

the defendant intended to file. Docket Sheet at 5.

On January 24, 2008, the parties appeared before Your

Honor, and the defendant, through his attorney, Robert Baum,

Esq., indicated that he intended to file a motion to dismiss the

Indictment on the basis of an alleged Sixth Amendment violation.

Docket Sheet at 6. The Court ordered that the motion be filed by

February 19, 2008, and that any opposition and the reply be filed

5

by February 26, 2008, and March 4, 2008, respectively. Docket
Sheet at 6. On February 19, 2008, the defendant filed a motion to
dismiss the Indictment on Sixth Amendment Speedy Trial grounds.
Docket Sheet at 6. The Government subsequently responded, and on
March 25, 2008, the parties appeared before Your Honor for oral
argument on the motion. Docket Sheet at 7. The Court denied the
motion. Docket Sheet at 7. At an April 17, 2008 pre-trial
conference, the Court scheduled trial for July 21, 2008, and a
final pre-trial conference for July 14, 2008. Docket Sheet at 7.
The Court direct that any motions in limine be filed by July 11,
2008. Transcript of Apr. 17, 2008 Conference at 3, attached as
Exhibit 9. On July 7, 2008, the Government filed a letter
requesting that one of the investigating DEA agents, James Lee,
be permitted to testify as a summary witness to authenticate wire
evidence. The defendant filed a motion to: (1) preclude the
Government from offering into evidence "coconspirator statements
obtained by a wiretap of numerous phone conversations," or, in
the alternative, a pre-trial hearing to determine the
admissibility of these statements; and (2) preclude the
Government from offering any testimony identifying the defendant
as the speaker "without first establishing, at a pre-trial
hearing, the evidentiary foundation for such identification."
Defendant' Motion to Preclude. On July 11, 2008, the Government
filed a response to the defendant's motion to preclude, and the

6

defendant filed a response to the Government's request to allow Agent Lee to testify as a summary witness. Within the defendant's response to the Government's summary witness letter, the defendant included an argument that the Government's "wiretap evidence is inadmissible" because of the Government's alleged failure to comply with the statutory sealing requirement. Defendant's July 11, 2008 Response, at 3.

On July 14, 2008, the parties appeared before Your Honor for a final pre-trial conference. At the pre-trial conference, Your Honor granted the Government's request that Agent Lee be allowed to testify as a summary witness in authenticating the wire evidence. Your Honor denied the defendant's motion to preclude, and Your Honor directed the Government to respond by July 16, 2008, to the defendant's argument regarding the sealing requirement.

## ARGUMENT

### I.  APPLICABLE LAW

#### A.  Timeliness of Motions to Suppress

Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure provides that "a motion to suppress evidence" must be made before trial. Fed. R. Crim. P. 12. The Rules, however, indicate that courts may set a firm motion deadline. See Fed. R. Crim. P. 12(c) ("The court may, at the arraignment or as soon

7

afterward as practicable, set a deadline for the parties to make pretrial motions and may also schedule a motion hearing."). The Federal Rules of Criminal Procedure also dictate that a party "waives any Rule 12(b)(3) defense, objection, or request not raised *by the deadline the court sets under Rule 12(c)* or by any extension the court provides." Fed. R. Crim. P. 12(e) (emphasis added). A court is permitted to grant relief if the party subject to the waiver can demonstrate "good cause."

Appellate courts have generally reviewed district court decisions declining to review untimely suppression motions only for abuse of discretion. See United States v. Salgado-Campos, 442 F.3d 684, 686 (8th Cir. 2006). The Second Circuit has suggested that a failure of the defendant to object to the motion schedule set by the district court may be fatal to a subsequent challenge to a district court's refusal to entertain an untimely suppression motion. See United States v. Wilson, 11 F.3d 346, 353 (2d Cir. 1993) (defendant's suppression motion, filed one month before trial, "was untimely . . . the district court ordered that all defense motions be filed by December 2, 1991 and that suppression hearings would commence on December 18, 1991. Wilson did not object to the warrant before the deadline and accordingly has waived her right to challenge it.").

**B.    The Sealing Requirement for Federal Wiretaps**

Title 18, United States Code, Section 2518(8)(a)

8

provides that:

> The contents of any wire, oral, or electronic
> communication intercepted by any means
> authorized by this chapter shall, if
> possible, be recorded on tape or wire or
> other comparable device. The recording of the
> contents of any wire, oral, or electronic
> communication under this subsection shall be
> done in such a way as will protect the
> recording from editing or other alterations.
> Immediately upon the expiration of the period
> of the order, or extensions thereof, such
> recordings shall be made available to the
> judge issuing such order and sealed under his
> directions. . . . . The presence of the seal
> provided for by this subsection, or a
> satisfactory explanation for the absence
> thereof, shall be a prerequisite for the use
> or disclosure of the contents of any wire,
> oral, or electronic communication or evidence
> derived therefrom under subsection (3) of
> section 2517.

18 U.S.C. § 2518(8)(a). Section 2518(8)(c) provides that "[a]ny

violation of the provisions of this subsection may be punished as

contempt of the issuing or denying judge."

"The primary thrust of § 2518(8)(a), see S.Rep. No.

1097, 90th Cong., 2d Sess., 105 (1968), and a congressional

purpose embodied in Title III in general . . . is to ensure the

reliability and integrity of evidence obtained by means of

electronic surveillance." <u>United States</u> v. <u>Ojeda Rios</u>, 495 U.S.

257, 263 (1990). "The presence or absence of a seal does not in

itself establish the integrity of electronic surveillance tapes.

Rather, the seal is a means of ensuring that subsequent to its

placement on a tape, the Government has no opportunity to tamper

9

with, alter, or edit the conversations that have been recorded."
Id.

        The Second Circuit has indicated that "sealing 'within one or two days' will normally be deemed immediate, but that 'any delay beyond that certainly calls for explanation.'" United States v. Maldonado-Rivera, 922 F.2d 934, 949 (2d Cir. 1991)(quoting United States v. Vazquez, 605 F.2d 1269, 1278 (2d Cir. 1979)).  "If surveillance tapes have not been sealed immediately, they must be suppressed unless the government furnishes an explanation for the delay that is 'satisfactory' within the meaning of the statute." Id. The Supreme Court has indicated that "the 'satisfactory explanation' language in § 2518(8)(a) must be understood to require that the Government explain not only why a delay occurred but also why it is excusable." Ojedo Rios, 495 U.S. at 265.

## II. THE DEFENDANT HAS WAIVED HIS MOTION TO SUPPRESS THE WIRE EVIDENCE BY FAILING TO TIMELY FILE THE MOTION

        The defendant argues in his response to the Government's summary witness letter that the Government's wire evidence is not admissible due to the Government' failure to comply with Section 2518(a)'s sealing requirement. As the sealing requirement does not bear on the relevance of the interceptions, their authentication, or their admissibility otherwise under the Federal Rules of Evidence, the defendant's argument must be considered a motion to suppress the tapes for failure to comply

10

with the sealing requirement. Indeed, nearly every published
decision that has addressed a failure to comply with the sealing
requirement has done so in the context of a motion to suppress.
See, e.g., Ojedo Rios, 495 U.S. at 261 ("After respondents were
indicted for various offenses relating to the Wells Fargo depot
robbery, they moved to suppress all evidence the Government had
obtained as a result of electronic surveillance."); Maldonado-
Rivera, 922 F.2d at 949 ("Prior to trial, defendants moved to
suppress the tapes."); United States v. Donlan, 825 F.2d 653 (2d
Cir. 1987); United States v. Rodriguez, 786 F.2d 472 (2d Cir.
1986) ("Defendants moved to suppress the wiretap evidence,
arguing, inter alia, that the statutory requirements regarding
judicial sealing of the tapes had been violated."). The
defendant's failure to file his suppression motion by the Court's
appointed deadline constitutes a waiver under Rule 12(e). See
Fed. R. Crim. P. 12(e) (indicating that defendant "waives any
Rule 12(b)(3) defense, objection, or request not raised by the
deadline the court sets under Rule 12(c) or by any extension the
court provides.").

Here, the defendant has filed his motion to suppress
the wire evidence approximately seven months after receiving the
wire affidavits and orders, which put him on notice that the
principal evidence against him was obtained via a court-
authorized wiretap. The motion was filed approximately five

11

months after the date the Court deemed the deadline for the filing of suppression motions. The defendant was supplied with all of the necessary information he required to file the instant motion or to make an additional discovery request. The defendant, however, has offered no indication that he requested any materials related to the sealing of the wire prior to the filing of the instant motion. Moreover, the defendant never objected to the Court's motion schedule or otherwise indicated that the schedule would be insufficient for him to investigate any possible motions. See Wilson, 11 F.3d at 353 (affirming refusal of district court to entertain late suppression motion where defendant "did not object to the warrant before the deadline and accordingly has waived her right to challenge it.").

Indeed, in this case the parties extensively litigated the defendant's pre-trial motions related to alleged Sixth Amendment violations and discovery. The defendant failed even to file his motion at the appointed time for the filing of motions in limine. The question as to whether the Government complied with Section 2518(8)(a) is fact-intensive, and the Government should not be required to investigate and litigate such a question on the eve of trial where the defendant had a full opportunity to raise any suppression motion months ago.

In United States v. Baker, 443 F.Supp. 526, 529 (S.D.N.Y. 1977), the district court denied the defendant's motion

12

to suppress for failure to comply with the sealing requirement

because the motion was filed substantially after deadline set up

by the court for the filing of motions. The court stated:

> At a pre-trial conference held on April 6,
> 1977, the court directed that all pre-trial
> motions be made within 10 days after counsel
> gained access to the materials upon which
> such motions were based. Copies of the
> Government's tape recordings were made
> available on April 9, 1977 and counsel for
> Baker received a copy of the Government's
> application for an eavesdropping warrant the
> following day. However, Baker's suppression
> motion was not filed until May 4, 1977, more
> than three weeks after it first could have
> been filed.

Id. The Court therefore held that "the motion must be denied as

untimely," but went on to address why the motion would have been

denied even if timely. See id. In other contexts, numerous other

courts considering untimely motions to suppress have refused to

entertain such motions. See, e.g., United States v. Lauderdale,

No. 07-cr-30052-MJR, 2007 WL 3231469 at *1 (S.D. Ill. Oct. 31,

2007) ("the Court DENIES defendant's motions to suppress (Docs.

36 and 37) as untimely. Jury trial remains set for December 10,

2007, and the final pre-trial hearing remains set for November

16, 2007."); United States v. Edgerson, No. 05-80763, 2006 WL

568376 at *1 (E.D. Mich. Mar. 07, 2006) ("Though styled as a

Motion in Limine, Defendant's present Motion is really nothing

more than another Motion to Suppress . . . . Because Defendant's

present Motion to Suppress was not timely filed, however, the

13

Court need not address the merits of Defendant's Motion.
Accordingly, Defendant's Motion to Suppress is denied as
untimely."). The instant motion was filed long after the
deadline set by the Court and should be rejected as untimely.

**III. THE WIRE EVIDENCE THAT THE GOVERNMENT SEEKS TO INTRODUCE WAS SEALED IN COMPLIANCE WITH 18 U.S.C. 2518(8)(A)**

**A. The Relevant Results of the McFoy Phone and Solo Phone Intercepts Were Properly Sealed Because Interception Was Continuing**

Even if the Court excuses the defendant's waiver, the
motion to suppress should be denied. With regard to the
Government's evidence obtained from the McFoy and the Solo Phone,
those interceptions were properly sealed prior to any applicable
deadline. Section 2518(a) provides, in relevant part, that
"[i]mmediately upon the expiration of the period of the order, *or
extensions thereof*, such recordings shall be made available to
the judge issuing such order and sealed under his directions." 18
U.S.C. § 2518(8)(a) (emphasis added). In <u>Maldonado-Rivera</u>, the
Second Circuit noted that the question of whether the Government
is required to seal wire interceptions at the conclusion of each
30-day period authorized by the issuing court, or only once the
Government has ceased interception for the final extension of an
authorization, remained an open question in the Circuit. <u>See
Maldonado-Rivera</u>, 922 F.2d at 950 (citing <u>United States</u> v.
<u>Badalamenti</u>, 794 F.2d 821, 825 (2d Cir. 1986); <u>United States</u> v.
<u>Vazquez</u>, 605 F.2d 1269, 1278 n. 21 (2d Cir. 1969); and <u>United</u>

14

States v. Mora, 821 F.2d 860, 863 n. 4 (1st Cir. 1987)). In

Maldonado-Rivera, the interceptions of the relevant phone

continued for over a year and were sealed only at the expiration

of the final authorization for continued interception, fifteen

days after the termination of interception. Maldonado-Rivera, 922

F.2d at 949. The court ultimately affirmed the district court's

denial of the suppression motion, ruling, among other

justifications, that the Government's "interpretation [of the

sealing requirement] law was not unreasonable" where the law of

the circuit on the issue was undefined. Id.

Indeed, in Vasquez, the Second Circuit stated

explicitly that "[w]e interpret the phrase 'period of the order,

or extensions thereof,' in the sealing provision of the federal

statute, § 2518(8)(a), to encompass a continuous authorized

wiretap in its entirety, regardless of whether the judicial

orders authorizing the initiation or continuation of the tap are

denominated 'orders,' 'extensions,' 'renewals,' or

'continuations.'" Vasquez, 605 F.2d at 1277. The Court therefore

rejected the defendant's argument that sealing at the expiration

of each period of authorization was necessary, and endorsed the

conclusion that sealing was only necessary at the conclusion of

the entirety of the interception of any phone. Id.; see also

United States v. Gallo, 863 F.2d 185, 192-93 (2d Cir. 1988)

("This court has previously determined that 'extensions,' as used

in the phrase 'period of the order, or extensions thereof' is to

be understood in a common sense fashion as encompassing all

consecutive continuations of a wiretap order, however designated,

where the surveillance involves the same telephone, the same

premises, the same crimes, and substantially the same persons.");

Badalamenti, 794 F.2d at 894 ("We believe that Judge Leisure

properly found that the delay in this case began when the

extension order expired"); United States v. Scafaldi, 564 F.2d

633, (2d Cir. 1977) ("Where the intercept is of the same premises

and involves substantially the same persons, an extension under

these circumstances requires sealing only at the conclusion of

the whole surveillance.").  The Second Circuit's decisions

indicating that the Government may present the wire interception

tapes for sealing at the conclusion of the final extension

represent the current state of the law in this Circuit.

More recently in this district, Judge McKenna addressed

the question of whether the Government was required to seal at

the conclusion of each 30-day period or only at the conclusion of

the final order authorization the extension of interception. The

court's written opinion stated:

> [Defendant] misunderstands when the
> government's obligation to seal was
> triggered. The statute requires sealing
> immediately "upon the expiration of the
> period of the order, or extensions thereof."
> 18 U.S.C. § 2518(8)(a) (emphasis added). The
> Second Circuit has determined that
> "extensions," as used in that phrase, " 'is

16

> to be understood in a common sense fashion as
> encompassing all consecutive continuations of
> a wiretap order, however designated, where
> the surveillance involves the same telephone,
> the same premises, the same crimes, and
> substantially the same persons." ' <u>United
> States v. Gallo</u>, 863 F.2d 185, 192-93 (2d
> Cir.1988), cert. denied, 489 U.S. 1083 (1989)
> (quoting <u>United States v. Vazquez</u>, 605 F.2d
> 1269, 1278 (2d Cir.), cert. denied, 444 U.S.
> 981 (1979)). *Moreover, the fact that an
> extension is granted after the term of the
> initial authorization order has technically
> expired does not mean that the continuation
> is not an "extension" within the meaning of
> the statute.*

<u>United States</u> v. <u>Pichardo</u>, No. 97 CR. 233(LMM), 1999 WL 649020 at *2 (S.D.N.Y. Aug. 25, 1999) (emphasis added). Thus, as is made clear by controlling Second Circuit law and at least one decision within this district, the Government was not required to seal the wire interception tapes until the conclusion of the final order authorizing interception of the McFoy Phone and the Solo Phone. That there was a short break in interception before the signing of the final authorization for an extension is irrelevant.

Ultimately, the Government did not obtain the final sealing order for interception over the McFoy Phone and the Solo Phone until September 29, 2005, approximately 14 days after the termination of interception.[3] However, due to the fact that the Government took the prophylactic measure of sealing tapes of intercepted communications at several junctures prior to the time

---

[3] The Government's reasons for the delay in sealing are discussed subsequently in this memorandum.

17

period when final sealing was called for by the statute, as described in the "Background" section above, the defendant can colorably challenge only the introduction of interceptions over the McFoy Phone and Solo Phone taking place from August 18, 2005, to September 16, 2005. But because the Government has no intention of introducing any interceptions from this time period, such a challenge is moot.

**B.    Intercepts Over The 6458 Phone Were Properly Sealed**

As discussed above, the DEA began interception over the 6458 Phone on May 11, 2005, and, although the order authorized interception to continue for 30 days or until the objectives of the investigation were achieved, the DEA elected to terminate that interception on May 26, 2005. On May 25, 2005, AUSA Romano transmitted a report to Judge Griesa indicating that, by May 23, the users of the 6458 Phone had apparently stopped making calls over the phone, and the DEA had reduced their interception of the 6458 Phone to pen register monitoring. <u>See</u> May 25, 2005 Periodic Report, attached as Exhibit 13.  The recordings were sealed approximately four business days later.[4]  <u>See</u> June 3, 2005 Sealing Order, attached as Exhibit 14. Thus, the recordings intercepted over the 6458 Phone were sealed a full week before the time period authorized under the order. As a result, any

---

[4] This period of time included the 2005 Memorial Day weekend.

challenge to the admissibility of calls intercepted pursuant to this order should be denied.

### C.   The Government Had Satisfactory Reasons For Any Sealing Delays

As explained above, the Government sealed the relevant recordings in compliance with the statutory requirements. However, should this Court find any failure to comply with those provisions, the recordings remain admissible because the Government has a satisfactory explanation for any such failure.

In Maldonado-Rivera, the Second Circuit stated that "[i]n general, explanations [for delayed sealing] have been ruled satisfactory where the government advanced a bona fide reason, there was no reason to believe there was any deliberate flouting of the Title III requirements, no reason to doubt the tapes' integrity, and no basis for inferring any other prejudice to the defendants." 922 F.2d at 950. The court indicated that "[b]ona fide administrative obstacles may provide an acceptable excuse." Id. Thus, in Scafaldi, the Court of Appeals agreed with the district court that a seven-day delay did not constitute a violation of Section 2518(8)(a) where the prosecutor had been preoccupied "with preparations for the upcoming trial." 564 F.2d at 641. Similarly, in Gallo, the Court of Appeals observed that a five day delay could be justified because of the involvement of a weekend and the need for administrative processing. Gallo, 863 F.2d at 193. The Gallo court opined:

19

> The authorizing order expired on March 6,
> 1982 – a Saturday – rendering any action by
> the government on the next day impossible.
> The government then required 3 days-March 8,
> 9, and 10-for administrative processing, and
> the tapes were sealed on March 11, 1982. The
> record contains no evidence of bad faith on
> the part of the government, or of prejudice
> incurred on the part of the appellants. We
> therefore find no error in the district
> court's denial of defendants' motion to
> suppress the fruits of the Ruggiero
> surveillance.

Id. Notably, in Badalamenti, the Second Circuit found the

Government's proffered explanation for a 21-day sealing delay

satisfactory where the Government explained that the supervising

Assistant United States Attorney had been distracted by emotional

and psychological problems related to the AUSA's cocaine abuse

while supervising the wire. Badalamenti, 794 F.2d at 824 ("Judge

Leisure . . . focused on the AUSA's statements to the FBI, which

indicated that he was distracted and 'often spent time

contemplating, during the performance of his official duties, how

he was going to obtain and consume cocaine during the evening

hours.'").

    While the Badalamenti decision describes an

extraordinarily disturbing underlying factual scenario, it

perfectly underscores that the focus of the inquiry must remain

on the question of whether the Government has advanced "a bona

fide reason" and whether the facts before the district court give

rise to any questions about deliberate flouting of the

requirements, the tapes integrity, or any other prejudice to the defendants. <u>Maldonado-Rivera</u>, 922 F.2d at 950.

Here, as is revealed by the Affidavit of AUSA Virginia Chavez Romano, the summer of 2005 presented an extraordinary number of challenges with regard to her workload. In June of 2005, AUSA Romano was one of the lead prosecutors in an investigation that yielded over 40 arrests during that month in the United States and Colombia. Romano Aff. ¶ 3.  This investigation, "Operation Mallorca," required her to travel to Colombia in early June to supervise a number of the arrests and interview relevant witnesses. Romano Aff. ¶ 3. Also during the summer of 2005, AUSA Romano was forced to prepare for two complex trials scheduled for the month of August in the Southern District of New York. Romano Aff. ¶ 5. The first trial, scheduled for August 1, 2005, was in the case of <u>United States</u> v. <u>Duran Colon</u>, No. 04 Cr. 811. The second trial was in the case of <u>United States</u> v. <u>Londono</u>, No. 04 Cr. 235, which was scheduled for August 15, 2005. Romano Aff. ¶ 5. AUSA Romano ultimately tried the August 1, 2005 trial, which lasted for three days, and then immediately resumed preparing for the August 15, 2005 trial. Romano Aff. ¶ 5.

During this summer, AUSA Romano was also simultaneously responsible for supervising three separate wire investigations. "Operation Big Papi," an investigation by the DEA into narcotics trafficking that involved wire interceptions stretching from

21

March of 2005 through approximately July of 2005. Romano Aff. ¶ 4. "Operation Highstep," a DEA investigation into a separate heroin trafficking organization, involved wire interceptions that lasted from approximately July of 2005 through November of 2005. Romano Aff. ¶ 4.  And, of course, AUSA Romano supervised the wire interceptions in the instant investigation. Romano Aff. at  ¶ 4. Each of these investigation required her to review linesheets of all of the wire interceptions on a daily basis, prepare progress reports for the issuing judges approximately every 10 days, and communicate with the Office of Enforcement Operations at Main Justice in order to secure authorization for relevant extensions. Romano Aff. ¶ 4.  When coupled with her required trial preparation and the management of her other cases, the work amounted to a massive organizational task. Viewed within the context of the Supervising AUSA's workload during the period of interception over the relevant phones, the Government's delay in sealing certain of the wires intercepted during the course of the instant conspiracy is excusable.

    This is particularly true, where, as here, the DEA followed strict procedures that have guaranteed the integrity of the interceptions over the 6458 Phone, the McFoy Phone, and the Solo Phone. As described in Agent Lee's affidavit, access to the wire interception room was strictly limited to authorized investigative personnel and approved translators. Lee Aff. ¶ 7.

22

The recordings for each 30-day period over each phone were maintained on a master disk within the DEA interception control room, which only authorized DEA technicians and other approved personnel were permitted to access. Lee Aff. ¶ 8. On the date that each relevant order was sealed, Agent Lee or one of the other investigating agents removed an unalterable magnetic optical disc, which was a duplicate of the master disc in the control room, and immediately brought the magnetic optical disc to the court to be presented before the appropriate part one judge. Lee Aff. ¶¶ 8 – 11.

That these procedures were all followed eliminates any real question about the integrity of the recordings. And as the Affidavits of Agent Lee and AUSA Romano demonstrate, there was no deliberate flouting of the requirements. AUSA Romano was managing a truly extraordinary workload during the period of interception of the McFoy Phones, and Agent Lee was supervising the first investigation to which he was assigned after graduating from the DEA Academy.

This explanation for the relatively short delays that are implicated in this case is more satisfactory than the explanations accepted by the courts in Badalamenti and Scafaldi, and is far more satisfactory than explanations which have been accepted in other circuits. In one recent, notable decision in the 7th Circuit, the proffered explanation for a 10-day sealing delay offered by the two Assistant U.S. Attorneys assigned to the investigation was that "[e]ach said she had thought the other

would take care of the matter." <u>United States</u> v. <u>Coney</u>, 407 F.3d 871, 874 (7th Cir. 2005).  Judge Richard Posner, writing for the panel, observed:

> We ask what should be deemed "satisfactory" in the context of a statute aimed at preventing government tampering with electronic evidence. The answer is that an explanation is satisfactory if, in the circumstances, it dispels any reasonable suspicion of tampering.

<u>Id</u>. at 875. Applying that reasoning, the court affirmed the district court's denial of the defendant's motion to suppress the wire evidence. <u>Id.</u>

## **CONCLUSION**

For the foregoing reasons, the Court should deny the defendant's motion to suppress the wire evidence.


Dated:    New York, New York
          July 16, 2008

                         Respectfully submitted,

                         MICHAEL J. GARCIA
                         United States Attorney


                  By:    _____/s/_____
                         Randall W. Jackson
                         Karl N. Metzner
                         Assistant United States Attorneys
                         Tel.: (212) 637-1029/2476